IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Express Parts LLC and Crisol Technology Hongkong Limited,<br><br>       Plaintiffs,<br><br>v.<br><br>BHRS Group, LLC,<br><br>       Defendant. | Civil Action No.<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Express Parts LLC and Crisol Technology Hongkong Limited (collectively, "Plaintiffs" or "Sellers") bring this action for declaratory judgment of patent invalidity and non-infringement against Defendant BHRS Group, LLC ("Defendant" or "BHRS"), and state and allege as follows:

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment of invalidity and non-infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*. and under the Federal Declaratory Judgment Act, 28 U.S.C. §§2201-2202. Plaintiffs seek a judicial declaration that Defendant's United States Patent No. 11,123,667 ("the '667 Patent") is invalid and not infringed by the manufacture, use, sale, offer for sale or importation into the United States of certain of Sellers' products as described below.

**THE PARTIES**

2. Plaintiff Express Parts LLC ("Express Parts") is a company organized and existing under the laws of the State of New Jersey, with a registered address at 2360 Route 33, Suite 112 Unit #537, Robbinsville, NJ, U08691.

1

3. Plaintiff Crisol Technology Hong Kong Limited ("Crisol") is a limited liability company organized and existing under the laws of Hong Kong, China, with a registered address at 185 G/F, Hengwei Industrial Centre, 6 Jiantai Street, Tuen Mun, New Territories, Hong Kong, China.

4. On information and belief, Defendant BHRS is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business in Lakewood, New Jersey.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2022.

6. As described in more detail below, an immediate, real, and justiciable controversy exists between the parties regarding whether certain water filter cartridges sold by Sellers infringe the '667 Patent, and whether the '667 Patent is invalid or unenforceable. This controversy arises from BHRS' infringement assertions against Sellers, which have caused and are continuing to cause Sellers' significant and ongoing irreparable injury. Because this action presents an actual controversy with respect to the noninfringement and invalidity of the '667 Patent, the Court may grant the declaratory relief sought under 28 U.S.C. §§ 2201-2202.

7. This Court has personal jurisdiction over Defendant. On information and belief, BHRS is headquartered in and operates much of its business in this District.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendant resides in this District, is subject to personal jurisdiction in this District, and, upon information and belief, a substantial portion of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

A. **Sellers and the Accused Product**

2

9. Plaintiff Express Parts is an e-commerce company, *i.e.*, an online retailer. Express Parts sells products such as water filter cartridges under the "Crystala Filters" brand through its online store accessible at www.Amazon.com ("Amazon"). Amazon is Express Parts' sole sales channel in the United States.

10. The "Crystala Filters" brand water filter cartridges sold by Express Parts are manufactured by the Ningbo Sailfish Sporting Goods Co., Ltd. ("Sailfish").

11. Amazon gives each product listing on Amazon.com a unique Amazon Standard Identification Number ("ASIN"). For example, Express Parts sells water filter cartridges through Amazon.com under the ASIN B0C374WCS1 ("the Accused Product"). The Accused Product was first available for sale on Amazon on April 27, 2023.

12. Plaintiff Crisol is also an e-commerce company, *i.e.*, an online retailer. Crisol sells products such as water filter cartridges under the "Glacier Fresh" brand through its online store available at https://glacierfreshfilter.myshopify.com/. Shopify is Crisol's sole sales channel in the United States.

13. Sailfish also manufactures the water filter cartridges sold by Crisol under the "Glacier Fresh" brand.

14. The water filter cartridges sold under the "Crystala Filters" and "Glacier Fresh" are essentially identical for the purposes relevant to this declaratory judgment action.

B. **United States Patent No. 11,123,667**

15. According to the information listed on its face, the '667 Patent entitled "Water Cooler Filter With Secure Bayonet-type Connection," was filed on June 11, 2018 as U.S. Patent Application No. 16/004,584 ("the '584 Application"). The '584 Application did not claim priority to any previous U.S. or foreign patent filing; and it was issued on September 21, 2021 as the '667 patent. A true and correct copy of the '667 patent is attached as **Exhibit A**.

3

16. The inventor listed on the face of the '667 Patent is Jonathan Rubin, a resident of Lakewood, NJ. Defendant BHRS is the assignee listed on the face of the '667 patent.

17. The '667 Patent includes 21 claims, including one independent claim and 20 dependent claims. Claim 1 is directed to a filter for a water cooler and includes several limitations. (*See* Ex. A at 8:44-9:13).

C. **Defendant and the Prior Product**

18. On information and belief, BHRS manufactures and distributes water cooler dispensers under the "Avalon" brand since 2008. BHRS has offered for sale on Amazon.com products entitled "Avalon Self Cleaning Bottleless Water Cooler Water Dispenser" including water filter cartridges filters under the ASIN B06XJ86F7L (the "Prior Product") since as early as March 10, 2017. A true and correct copy of a printout of the Prior Product's product listing on Amazon.com is attached as Exhibit B.

19. On information and belief, BHRS claims in the item description on the Prior Product's listing webpage that "Patented Dual filters are included with the water cooler. This consists of a Sediment filter (listed as model Avalon A5FILTER) and a Carbon Block filter (listed as model Avalon A4FILTER)." *Id.*

D. **Defendant's Acts Creating the Actual Controversy with Express Parts**

20. The web domain "Amazon.com" hosts the Amazon Marketplace and its millions of product listings. For an online retailer to effectively compete in the United States, it must sell on the Amazon Marketplace. *See, e.g.*, Emily Dayton, Amazon Statistics You Should Know: Opportunities to Make the Most of America's Top Online Marketplace, BigCommerce.com Blog, https://www.bigcommerce.com/blog/amazon-statistics/ (last visited March 4, 2024) ("Each month more than 197 million people around the world get on their devices and visit Amazon.com. That's more than the entire population of Russia. In 2018, Amazon's share of the US e-commerce market hit 49% . . . that is more than Amazon's top

three competitors combined, with eBay coming in at 6.6%, Apple at 3% and Walmart at 3.7%.") Nine out of ten American consumers use Amazon to price check products they find elsewhere, and roughly 95 million people have Amazon Prime memberships in the United States. *See id.*

21. Amazon, Inc. has established the Amazon Patent Evaluation Express Procedure ("APEX") to resolve allegations that products sold on Amazon.com infringe third-party patent rights. Speaking generally, the APEX process begins when a patent-holder notifies Amazon that it believes product(s) sold under specified ASIN(s) infringe its patent and asks Amazon to initiate an APEX proceeding. After receiving that notice of alleged infringement, Amazon.com will send an APEX agreement to the seller of the accused product(s). At that point, the seller has three weeks to execute and return the agreement to initiate APEX. If the seller declines to participate in APEX, Amazon.com will remove the accused product listing from www.amazon.com. Under APEX, a third-party evaluator assesses the infringement claim on an accelerated timeline using procedures established by Amazon. *See, e.g.*, Amazon Formally Adopts Neutral Evaluation Process for Enforcing Utility Patents, Baker Botts, https://www.bakerbotts.com/thought-leadership/publications/2022/september/amazon-formally-adopts-neutral-evaluation-process-for-enforcing-utility-patents (September 1, 2022) (citing Amazon Patent Evaluation Express Procedure (Version 220321)).

22. On August 23, 2023, Amazon.com notified Express Parts that BHRS had notified Amazon that it claims the Accused Product infringes the '667 Patent and had requested an APEX proceeding. Simultaneously, Amazon.com forwarded to Express Parts an APEX Agreement ("the Agreement") already executed by BHRS. On September 22, 2023, Express Parts executed and returned the Agreement back to Amazon.com, however, Express Parts had missed Amazon's three-week deadline to agree to the APEX proceeding. A true and correct copy of the signed Agreement is attached as **Exhibit C**.

23. Amazon removed the listing for the Accused Product (ASIN B0C374WCS1) from the Amazon Marketplace without conducting any sort of infringement evaluation. Express Parts appealed but failed to re-list its ASIN.

24. Express Parts' Accused Product remains delisted from Amazon.com, and Express Parts has been unable to sell its accused Crystala water filter cartridges through Amazon.com since the delisting.

E. **Defendant's Acts Creating the Actual Controversy with Crisol**

25. The web domain "Shopify.com" hosts the Shopify platform, an e-commerce platform for online stores and retail point-of-sale systems. The Shopify platform offers a suite of services to online retailers, including payment processing, marketing, shipping and customer engagement tools.

26. Shopify.com has implemented a patent infringement reporting system somewhat similar to the Amazon.com APEX system described above, wherein after a patent holder submits an infringement complaint against a product sold through Shopify.com, Shopify will generally remove the challenged content from its platform and then inform the affected merchant via the store admin of the content that has been affected. On July 29, 2023, Crisol received an Intellectual Property Infringement Notice from legal@shopify.com and Shopify removed the Accused Product from its platform https://glacierfreshfilter.myshopify.com/.

27. Defendant's allegations that Plaintiffs infringe the '667 Patent creates an actual case or controversy regarding the validity and alleged infringement of the '667 Patent. In addition, Defendant's allegations, made to online marketplace platforms including Amazon.com and Shopify.com, threaten actual and imminent injury to Plaintiffs.

28. As noted above, the Amazon Marketplace (*i.e.*, Amazon.com) and the Shopify platform (*i.e.*, Shopify.com) are the sole U.S. sales channels for Express Parts and Crisol, respectively.

29. When Amazon delisted the Express Parts' accused products as a result of BHRS's unchallenged infringement notices, Express Parts lost significant amounts of gross revenue and net profits from its sales of the accused water filter cartridges.

30. When Shopify delisted the Crisol's accused products as a result of BHRS's unchallenged infringement notices, Crisol lost significant amounts of gross revenue and net profits from its sales of the accused water filter cartridges

31. Express Parts is also suffering other indirect harms from the Amazon delisting of ASIN B0C374WCS1. First, its business model depends upon a rapid turnover of inventory, but a considerable portion of its capital is now tied up in (former) Amazon inventory which it cannot sell through, and could be removed and destroyed by, Amazon. And Express Parts remains liable to its suppliers and vendors for the purchase price of the water filter cartridges and related costs.

32. In addition to the direct effects of monetary losses, Each Seller' delisted water filter cartridges have lost and continue to lose sales numbers, product reviews, and product ratings, which are all important factors in determining its ranking in its e-commerce platform. For example, Amazon ranking is in turn important to product visibility to the consumers, which creates a significant sales boost.

33. Moreover, since the delisting, Amazon has directed Express Parts' potential customers to competing products. Upon information and belief, customers who search Amazon.com for the delisted Express Parts products will instead reach a page filled with sponsored ads for competing water filter products and links to other "brands related to your search."

## COUNT I

(Invalidity of U.S. Patent No. 11,123,667)

7

34. Plaintiffs restate and incorporate by reference the allegations in the paragraphs above as if set forth fully herein.

35. For at least the reasons described above, an actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '667 Patent.

36. Claims 1-21 of the '667 Patent are invalid because the purported inventions therein fail to meet the conditions of patentability specified in 35 U.S.C. § 100 *et seq.*, including but not limited to the novelty requirements of 35 U.S.C. § 102.

37. Without limiting the grounds of invalidity Plaintiffs may assert in this action, at least claim 1 of the '667 Patent is invalid under 35 U.S.C. 102(a)(1) based on the "on-sale bar" because commercial products embodying each and every element of claim 1 of the '667 Patent were on sale -- and (upon information and belief) sold -- to U.S. consumers more than a year before the filing date of the '584 Application.

38. As reflected in the attached Exhibit D, the Prior Product has been on sale since as early as March 10, 2017 on Amazon.com with products entitled "Avalon Self Cleaning Bottleless Water Cooler Water Dispenser".

39. As shown by the images in the table below comparing the product to the Figures in the '667 patent, BHRS's Prior Product embodies the patented invention claimed by the '667 Patent.

| **BHRS Prior Product**<br>(ASIN B06XJ86F7L)<br>(Available on Amazon.com since March 10, 2017) | **The '667 Patent**<br>Application filed on June 11, 2018 |
|---|---|



40. On information and belief, based on the "Date First Available" on Amazon.com published on the product's listing page, BHRS' Prior Product embodying the claimed '667 Patent was first publicly available on Amazon.com more than one year prior to the effective filing date of the '667 Patent on June 11, 2018.

41. Therefore, BHRS's prior sales of the Prior Product is a *prima facie* case of on sale under 35 U.S.C. §102(a)(1) against the patentability of the '667 Patent.

42. Plaintiffs expressly reserve the right to assert additional grounds of invalidity after having had to conduct discovery and after the Court has construed the claims of the '667 Patent.

43. Plaintiffs seek a declaratory judgment that at least claim 1 of the '667 Patent is invalid at least under 35 U.S.C §102(a)(1).

## COUNT II

(Non-Infringement of U.S. Patent No. 11,123,667)

44. Plaintiffs restate and incorporate by reference the allegations in the paragraphs above as if set forth fully herein.

45. The '667 Patent has only one independent claim, which is reproduced below. The remaining claims, claims 2-21, all depend, directly or indirectly, from claim 1. Therefore, any accused products must satisfy all limitations of claim 1 for there to be infringement of any claim of the '667 Patent. 37 CFR 1.75(c).

> Claim 1:
>
> A filter for a water cooler comprising a housing with a cavity and cavity ports, said filter comprising:
>
> an end and an axis, said filter end comprising:
>
> a cylindrical base having a base surface at least a portion of which extends in a plane perpendicular to said filter axis; and
>
> a filter neck extending from said base surface, said neck having filter ports and a side surface,

said neck having a bottom section, a lower top section extending upward from the bottom section, an upper top section extending upward from the lower top section and dimensionally smaller than the lower top section, and a plurality of filter ports,

said bottom section having a side surface,

said upper top section having a first planar top surface,

said lower top section having a second planar top surface,

said upper top section comprising a planar step extending upward from the first planar surface and wherein the planar step forms first and second teeth extending outward from a center of the upper top section,

said first and second teeth comprising a first and second edge, wherein said first and second edges are parallel to each other and offset from the center of the upper top section,

said side surface of said neck comprising an elongated protrusion extending in a direction parallel to said axis,

said base surface comprising an inclined surface portion having one or more protrusions extending from said inclined surface portion,

said filter end being configured to be received in the housing in bayonet-type fashion to align said filter ports and the cavity ports.

46. For Sellers' Accused Product to infringe claim 1 of the '667 Patent, the filter for a water cooler must have "an inclined surface portion having one or more protrusions extending from said inclined surface portion." The claimed protrusions (E) are depicted in FIGS. 2-4, reproduced below:



FIG. 2

FIG. 3

FIG. 4

47.

(Ex. B at FIGS. 2-4)

48.  As described in the '667 patent's specification, these figures depict a base surface 30 with two spaced inclined surface portions 32 on opposite sides of the base. Each of those portions carries one or more protrusions. Preferably, each of the one or more protrusions includes a complex set of protrusions, generally designated E. As illustrated, the complex set of protrusions E forms a logo and the word AVALON, for example. (Ex. B at 5:65-6:3).

12

49. The Accused Product does not include every limitation of claim 1 of the '667 Patent for at least the reasons described herein. For example, the Accused Product does not include the claimed base surface.

50. As seen in the photographs below, the Accused Product does not include a base surface with "an inclined surface portion having one or more protrusions extending from said inclined surface portion."



51. As seen in the photographs above, the Accused Product has no protrusions extending from an inclined surface portion of a base surface as recited in Claim 1 of the '667 patent and depicted in Figures 2-4 of the '667 Patent, let alone a complex set of protrusions forming a logo as described in the specification. BHRS could have readily ascertained this non-infringement by a simple visual examination of the readily available and inexpensive Accused Product.

52. Despite this fact, Defendant has asserted that the Accused Product infringes the '667 Patent and thereby caused the delisting of Accused Product from online platforms without any infringement evaluation.

53. An actual and substantial controversy has arisen and now exists between the parties regarding whether Sellers infringe the '667 Patent by making, using, selling, offering for sale and/or importing for sale the Accused Product in the United States.

54. Plaintiffs expressly reserve the right to assert additional grounds of non-infringement as appropriate after having the ability to conduct discovery and the Court has construed the claims.

55. Plaintiffs seek a declaratory judgment that making, using, selling, offering for sale and/or importing the Accused Products, does not and will not infringe any valid claim of the '667 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment and relief as follows:

a) Entering a permanent injunction ordering BHRS to withdraw and retract its APEX request/infringement complaints against the Sellers' products that it had lodged with Amazon.com and Shopify.com and to make no further complaints of infringement to Amazon.com or Shopify.com against the Sellers' products based on the '667 Patent or any related patent while this litigation is pending.

b) Declaring that claims 1-21 of the '667 Patent are invalid;

c) Declaring that the manufacture, use, sale, offer of sale, or importation of Sellers' products do not directly or indirectly infringe any valid and enforceable claim of the '667 Patent, either literally or under the doctrine of equivalents

d) Enjoining Defendant from enforcing the '667 Patent;

e) Declaring this action to be an exceptional case under 35 U.S.C. § 285 and awarding Plaintiffs costs, expenses, and disbursements in this action, including reasonable attorneys' fees; and

a) Such further and additional relief as the Court deems just and proper.

Dated: March 13, 2024                                Respectfully Submitted,



_____
Wang, Gao & Associates, P.C.
By: Heng Wang, Esq.
36 Bridge Street
Metuchen, NJ 08840
Telephone: (732) 767-3020
Facsimile: (732) 352-1419
heng.wang@wanggaolaw.com
*Attorney for Plaintiffs*


Arch & Lake, LLP
Haoyi Chen
2500 Wilcrest, Suite 301
Houston, Texas, 77042
Phone: 346-335-9890
Fax: 312-614-1873
haoyichen@archlakelaw.com
*To be admitted Pro Hac Vice*

15